TEN MILE COAL & COKE CO. v. BURT et al.

(Circuit Court, N. D. West Virginia. May 10, 1909.)

CANCELLATION OF INSTRUMENTS (§ 37*)—RIGHT OF CANCELLATION—VIOLATION OF TRUST—PLEADING.

A bill, alleging that defendant secured a conveyance from complainant of valuable property on his promise to procure a third party to build a line of railroad and operate it for 20 years as an independent and competing road, and to afford to complainant facilities for shipping coal from its lands on such line, and that he did not intend to fulfill such promise, and did not, the road having been built and turned over to a rival company, states a cause of action for the cancellation of the conveyance on the ground that defendant obtained the same by fraud and deceit, in violation of a relationship of trust or agency against which he cannot set up the defense of laches or acquiescence.

  [Ed. Note.—For other cases, see Cancellation of Instruments, Dec. Dig. § 37.*]

In Equity. On demurrer to bill.

Plaintiff has filed its bill, in substance alleging itself, prior to 1896, to have been the owner of about 2,500 acres of coal on Ten Mile creek, in Harrison county, W. Va.; that T. M. Jackson, its president and the owner of substantially all its stock, conceived the idea of building a railroad from New Martinsville, on the Ohio river, to Clarksburg, and thence to Belington, in said state, by and through and for the purpose of developing plaintiff's coal property and like properties adjacent, owned by said Jackson personally; that to this end he secured a charter for such road, known as the "Short Line Railroad," surveyed the line, procured rights of way, filed the maps and profiles at his own expense, and turned all over to the railroad corporation; that Jackson was made president of this railroad company, as also of plaintiff; that plaintiff,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

by power of attorney executed November 21, 1896, authorized him to sell and dispose of its property rights and franchises upon conditions that he might deem best and to whom he might see fit; that in January, 1897, he entered into a contract with one Machen for the construction of the railroad upon terms and conditions set forth, but not deemed material to state; that in this state of affairs interviews were sought with him by defendant George A. Burt, in person and by agents, and he was informed that the Ohio River Railroad wanted to construct for him this Short Line Railroad; that these interviews resulted in his being introduced to H. H. Rogers, then president of the Ohio River Railroad (while Burt was its general manager), and the result was Jackson bought from Machen for $500 the release of the latter's construction contract and entered into one with Rogers for the construction of the road; that this agreement was made with the express understanding that Rogers, through his agent, Burt, should construct the road at his own expense and operate and maintain it as an independent and competing line, and especially as to the Baltimore & Ohio Railroad, from whose exactions and oppression the said Jackson as a coal shipper had aforetime suffered; that it should not only be built and operated as an independent line, but it was expressly agreed it was not to be sold to any other railroad company within 20 years from its construction; said Jackson was to remain its president, and every facility for the development and shipping of coal should be given the plaintiff and other coal owners along its line. It is then charged that Burt, the agent of Rogers, very soon after this agreement made in his presence, and after the fulfillment of it in detail had been turned over to him by Rogers, demanded from Jackson for his services, performed and to be performed in securing the construction of this road and the maintenance and operation thereof for at least 20 years as an independent line, and which he would cause to construct tipples at its Ohio river terminus for the handling and shipping of coal, including that of plaintiff, that he should be compensated, and, this being communicated by Jackson to it, it, in order to accomplish the construction of the road upon the terms agreed, to accomplish the development of its coal, and to secure shipping facilities as agreed upon, for these considerations, and these only, conveyed, at the instance of Burt, to Ella T. Burt, his wife, 1,000 acres of its coal, alleged to be worth $100,000. This conveyance, it is charged, was consummated by a written agreement to convey, dated June 6, 1899, and by three deeds, dated July 16, 1901, November 30, 1901, and February 22, 1902. It is then charged that the Ohio River Railroad, substantially owned by Rogers and Burt, was not a paying road, having no coal along its line, and that its only chance to be profitably operated depended upon its building or securing a branch line into coal territory like that along the proposed Short Line, dominated or controlled by the Baltimore & Ohio Railroad; that Rogers and Burt never undertook the construction of the Short Line Railroad with any purpose or intention to perform their promises and agreement with Jackson, but, on the contrary, fraudulently and deceitfully resorted to such promises and agreements in order to secure its rights and franchises and with the fixed purpose and intention, from the start, by its construction to enable them to unload upon the Baltimore & Ohio Railroad their unprofitable Ohio River line upon the strength of the Short Line's value. This unloading upon and sale to the Baltimore & Ohio Company it is charged of the two lines, the Ohio River and the Short Line, was made almost before the Short Line was completed, and in utter disregard of the agreement made by Rogers and Burt, whereby the opportunity for the profitable development of plaintiff's property was dissipated, no shipping facilities were furnished, no tipples erected, and it was compelled to sell and dispose of the remainder of its property. Burt, it is charged, however, caused side tracks to be built by the railroad company into the 1,000 acres so conveyed to his wife, whereby its development was secured, and then leased it, so as to receive a royalty of 6 cents per ton for the coal. The bill charges Ella T. Burt to have had full knowledge of the false and deceitful promises and agreements whereby the conveyances of the coal were made to her; that she took such conveyances only, in fact, as trustee for her husband, who had it so conveyed, knowing that it was not intended to fulfill the agreements by which it was obtained; that such conveyances were made without considerations either good or valuable in law, and a cancellation thereof as clouds upon

plaintiff's title is prayed. To this bill the defendants George A. and Ella T. Burt have filed a written demurrer, alleging (a) that the plaintiff has not made or stated a case entitling it to relief in equity; (b) that the bill shows on its face plaintiff to have been guilty of laches in instituting its suit, whereby its claim is stale; (c) that the allegations of the bill show acquiescence on the part of plaintiff in the sale of the Short Line Railroad to the Baltimore & Ohio Company, and in the fraud of Burt, if any, and ratification of the same; and (d) that the plaintiff has a full and complete remedy at law.

John H. Holt, H. C. Duncan, M. G. Sperry, and George W. Johnson, for plaintiff.

Vinson & Thompson and W. E. Chilton, for defendants.

DAYTON, District Judge (after stating the facts as above). After long and patient study of the many authorities cited in the able briefs filed by counsel on both sides touching the application to this case of the equitable doctrines of laches and acquiescence, I have felt constrained to reason the true solution to be reached from a somewhat different standpoint from either of those taken by contending counsel. Giving the broadest and most liberal construction to the allegations of the bill in favor of the plaintiff, as I must do upon this demurrer, which admits them to be true, it seems to me that I may epitomize the case to be that in consideration of the undertaking on the part of Burt to secure Rogers to build the Short Line Railroad, maintain and operate it as an independent line for at least 20 years, secure him to build tipples at the Ohio River terminus, furnish track and shipping facilities whereby the plaintiff could develop and mine its coal, and have Jackson, its substantial owner, retained as its president, by reason of all which the plaintiff would be assured, not only of full and complete shipping facilities, but also of much-desired carrying competition, the plaintiff agreed to and did convey, as compensation for these things to be accomplished by Burt in its behalf, the 1,000 acres of coal. This being true, a relation in the nature of a trust, an agency, at least, was created. It seems to me that the allegations of the bill are ample to establish (a) that Burt himself had no means with which to build, and was not expected to build, the railroad; (b) that his connection with it was solely as the agent of Rogers, who was the man of means; (c) that he did not undertake to pay a direct consideration for the coal, but only to perform certain services, to the end that certain advantages should accrue to the plaintiff, which, if he accomplished, he was to receive this 1,000 acres of coal in compensation. If this contract had been made direct with the principal, Rogers, and the conveyances had been made to Rogers in express consideration of his contract to expend the money necessary to build the road, to maintain its 20-year independence, to furnish shipping facilities, etc., no possible trust relation could be assumed. The building of the road would have been at least part performance, and to that extent a valuable consideration, and after long delay equity would assume acquiescence in the change of conditions. If, however, one undertakes as trustee to do for a consideration certain things, is paid for it in advance, does not do it, but in fact never intended to do so, but by false promises has secured his principal's property by fraud and deceit, equity will not, in my judgment, allow him to plead laches in order that he may

retain his illgotten gains. As well establish the doctrine that if a man rob me on the highway of my purse, and I do not sue for its recovery at once, that I am guilty of laches and have acquiesced in his right to it!

Assuming that the allegations of this bill are true, as I must, Burt secured from this coal company $100,000 in value of its property upon promises of what he would secure Rogers to do, knowing at the time that the things contemplated would not be done by Rogers, and no practical good, but, on the contrary, evil, would inure to the company in fact. However, if Burt cannot be held in trust relation to plaintiff in this transaction, nor as its agent to secure these benefits for it, I am nevertheless satisfied that allegations of the bill are sufficient to charge that the consideration has wholly failed, and that no good or valuable consideration can be relied upon by Burt and wife to retain this property. The deeds are sought to be removed as clouds upon title, and as having wholly failed in consideration. Near 100 cases have been cited by counsel, pro and con, touching this subject, most of which I have examined, but refrain from discussing now. If the evidence upon final hearing is not sufficient to sustain the allegations of this bill, then no discussion of these principles will be necessary. If, however, such evidence is sufficient, I am well satisfied these same defenses will be relied upon at final hearing, when the legal principles can be much better applied to and illustrated by the facts as they shall then be developed.

Let the demurrer be overruled.